COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-310-CR

 

 

ERIC LYNN JONES                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Eric Lynn Jones appeals his
conviction for fraudulent use of identifying information.  In a single point, appellant complains that
the trial court improperly denied his motion to suppress evidence.  We affirm.








At 3:30 a.m., Officers
Charles Hall and Steven Smith stopped appellant for driving a van without a
working headlight.  Appellant=s wife, Martha Rodriguez, was a passenger in the van.  After the stop, the deputies discovered that
appellant did not have a valid driver=s licence, proof of insurance, or vehicle registration sticker, and
that there was an open container of alcohol on the driver=s side of the van.  The deputies
also discovered that Rodriguez did not have a valid driver=s license. 

Both appellant and Rodriguez
appeared nervous, and they told the deputies that they were driving at 3:30
a.m. because traffic was lighter during this time.  They also gave conflicting answers to
questions about the origins of their trip. 
They stated that they were returning from visiting Rodriguez=s family in Fort Worth, but Rodriguez had said earlier that she did
not have family in Fort Worth. 








The officers determined that
the van was not stolen; however, through the van=s window Officer Hall observed car parts in the back of the van that
did not appear to match the van.  Officer
Hall was concerned that the parts could be stolen, and he asked appellant for
permission to search the van.  Both officers
testified that appellant orally consented to the search of the van and that
Rodriguez also consented to a search of her purse.[2]  Officer Smith further testified that
appellant=s consent
was informed and voluntary and that Smith did not coerce appellant or use any
type of duress or force to obtain the consent. 

During the search of the van,
Officer Smith discovered a marijuana cigarette on the floor of the passenger
side of the van.  The officers also found
a Avery realistic@ looking toy
pistol that appeared to be a BB gun and a bag containing a substance that
Rodriguez claimed was rock salt, which was packaged as a controlled substance
would be packaged for sale.  In addition,
Officer Smith searched an unlocked silver briefcase that was behind the van=s front seats within both occupants= reach.[3]  Officer Smith considered appellant=s consent to search the van to include consent to search the briefcase
because it was in the van.  Further,
after discovering the marijuana and the bagged substance, Officer Smith
believed he had probable cause to search the van and its contents for
controlled substances.  An initial search
of the briefcase yielded a large amount of jewelry, a couple of two-way radios,
a pair of handcuffs, and a hand-penciled sketch of a Texas inspection sticker. 








The officers noticed that the
sketch of the inspection sticker matched the inspection sticker displayed on
the van=s windshield, which was also a hand-drawn sketch rather than a valid
sticker.  Consequently, appellant was
placed under arrest for having no driver=s license or proof of insurance and for displaying a fictitious
inspection certificate. 

The officers could not
release the van to Rodriguez because she, too, lacked a valid driver=s license.  Therefore, they
decided to impound the van.      Following
his arrest, appellant repeatedly asked that the briefcase be turned over to
Rodriguez.[4]  The officers considered appellant=s repeated, insistent requests that the briefcase be turned over to
Rodriguez suspicious, particularly in light of the items they had previously
found there.  Officer Hall also explained
that it was customary practice, before releasing property from a vehicle to a
third party following an arrest, to thoroughly search the property to ensure
that no illegal items are accidentally released and that all valuables are
accounted for.  Therefore, Officer Smith
conducted another search of the briefcase. 
This search revealed two altered Texas identification cards and two
altered social security cards for persons other than appellant or Rodriguez,
and a blank check that did not belong to either of them.  Receipts and credit information found in
appellant=s wallet and
Rodriguez=s purse
matched some of this information. 








As a result of these
discoveries, appellant was indicted for the charged offense.  He filed a pretrial motion to suppress all of
this evidence, as well as any oral or written statements he made following his
arrest.  In his motion, appellant argued
that the search of the van and briefcase were unlawful, that his arrest was
unlawful, and that any post-arrest oral or written statements he made were
fruits of the poisonous tree.  Following
an evidentiary hearing, the trial court denied appellant=s motion to suppress.  Appellant
was then convicted following a bench trial. 
This appeal followed. 

In his sole issue on appeal,
appellant complains that the trial court improperly denied his motion to
suppress because a law enforcement official may not search a closed briefcase
in a vehicle absent an exception to the warrant requirement, none of which is
applicable in this case. 








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.[5]  In reviewing the trial court=s decision, we do not engage in our own factual review.[6]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[7]  Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[8]  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.[9]









When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.[10]  When there are no explicit findings of
historical fact, the evidence must be viewed in the light most favorable to the
trial court=s ruling.[11]  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.[12]  

The Fourth Amendment protects
against unreasonable searches and seizures.[13]  To suppress evidence because of an alleged
Fourth Amendment violation, the defendant bears the initial burden of producing
evidence that rebuts the presumption of proper police conduct.[14]  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.[15]  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable.[16]









Whether a search is
reasonable is a question of law that we review de novo.[17]  Reasonableness is measured by examining the
totality of the circumstances.[18]  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.[19]  A search conducted without a warrant is per
se unreasonable unless it falls within one of the Aspecifically defined and well-established@ exceptions to the warrant requirement.[20]  Two of those exceptions are searches
conducted pursuant to the suspect=s voluntary consent and searches incident to arrest.[21]









For a consent search to be
reasonable, the consent must have been voluntarily given and not the result of
duress or coercion, either express or implied.[22]  Whether consent was voluntarily given is a
question of fact to be determined from the totality of the circumstances
surrounding the statement of consent.[23]  The federal constitution requires the State
to prove the validity of the consent by a preponderance of the evidence; the
Texas Constitution requires proof by clear and convincing evidence.[24]


Factors courts consider in
determining voluntariness include the youth, education, and intelligence of the
accused, the  constitutional advice given
the accused, the length of the detention, the repetitiveness of the
questioning, and whether physical punishment was used.[25]  Testimony by law enforcement officers that no
coercion was involved in obtaining the consent is also evidence of the consent=s voluntary nature.[26]  Although a police officer=s failure to inform the accused that he can refuse consent is a factor
to consider, the absence of such information does not automatically render the
consent involuntary.[27]  Nor is consent rendered involuntary merely
because the accused is under arrest.[28]  Consent is not established, however, by
showing no more than acquiescence to a claim of lawful authority.[29]








The standard for measuring
the scope of the suspect=s consent is that of objective reasonablenessCwhat would the typical reasonable person have understood by the
exchange between the officer and the suspect?[30]  The question is not to be determined on the
basis of the subjective intentions of the consenting party or the subjective
interpretation of the searching officer.[31]  In applying this standard, the federal courts
of appeals have held that it is objectively reasonable for an officer to
conclude that an individual=s general consent to the search of his vehicle includes the consent to
search closed but unlocked containers found in the vehicle.[32]









That the
defendant did notCand probably
could notCknow what
the officer was looking for does not change our view of his consent.  It is self-evident that a police officer
seeking general permission to search a vehicle is looking for evidence of illegal
activity.  It is just as obvious that
such evidence might be hidden in closed containers.  If the consent to the search is entirely
open-ended, a reasonable person would have no cause to believe that the search
will be limited in some way.[33]

Thus, if an officer makes a general request to
search and the individual consents, knowing that there are unlocked containers
in his vehicle, the individual should expressly limit his consent to the
vehicle but not the containers, or, at the very least, he should object when
the officer begins to open the container.[34]








Once an officer has probable
cause to arrest, he may search the passenger compartment of a vehicle,
including any containers located therein, as a search incident to that arrest.[35]  Probable cause for arrest exists when police
have reasonably trustworthy information sufficient to warrant a reasonable
person to believe that a particular person has committed or is committing an
offense.[36]
 It is irrelevant whether the arrest
occurs immediately before or after the search, as long as sufficient probable
cause exists for the officer to arrest before the search.[37]


In this case, the trial court
did not make any explicit findings of historical fact; therefore, we must view
the evidence in the light most favorable to the trial court=s rulings.[38]









Regarding the issue of
voluntariness, Officers Hall and Smith both testified that appellant consented
to the search of his van.  Officer Smith
further testified that appellant=s consent was informed and voluntary and that Smith did not coerce
appellant or use any type of duress or force to obtain this consent.  Although appellant was not advised that he
had the right to refuse consent, he was detained only about fifteen minutes
before the officers requested consent to search,[39]
the officers requested consent only once before it was given, they did not threaten
appellant with any adverse consequences if he refused consent, brandish their
weapons, or engage in any other show of force, and appellant was not under
arrest when the request to search was made. 
Under these circumstances, we hold that the trial court did not err by
concluding that the State had proved by clear and convincing evidence that
appellant=s consent to
the search was voluntary.[40]  Although appellant testified that he never
consented to the search of his van, the trial court was free to believe the
officers= testimony and disbelieve appellant=s.[41]








Further, appellant=s general consent to the search of his van permitted the officers to
open closed but unlocked containers that they found in the van.[42]  Although appellant testified that the
briefcase was locked on one side and that Officer Smith had to break the lock
to open the case, the trial court was, once again, free to believe Officer
Smith=s testimony that the briefcase was not locked and to disbelieve
appellant=s testimony.[43]  Finally, once the officers had probable cause
to arrest appellant for having an invalid driver=s license, no proof of insurance, and for displaying a fictitious
inspection sticker, the officers were authorized to re-search the briefcase as
a search incident to arrest.[44]

Accordingly, for all of these
reasons, we hold that the trial court did not abuse its discretion by denying
appellant=s motion to
suppress.  We overrule appellant=s issue and affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    CAYCE,
C.J.; GARDNER and WALKER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 22, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]There
is conflicting testimony concerning whether appellant consented to the search
of the van.  Appellant did not sign a
written consent, and he testified that he did not orally consent to the search.






[3]Appellant
testified that the briefcase was locked on one side and that Officer Smith had
to break the lock in order to search it. 






[4]Appellant
testified that he also asked that a leather jacket be turned over to
Rodriguez.  Officer Smith did not
remember the request regarding the coat. 





[5]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 





[6]Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.). 





[7]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).





[8]Johnson
v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).





[9]Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652‑53.





[10]Estrada, 154
S.W.3d at 607.





[11]Id.





[12]Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert.
denied, 541 U.S. 974 (2004); Ross, 32 S.W.3d at 856; Romero,
800 S.W.2d at 543.  





[13]U.S. Const. amend. IV.





[14]Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).





[15]Id.





[16]Id.





[17]Kothe
v. State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).





[18]Id. at
63.





[19]Id.





[20]McGee
v. State, 105 S.W.3d 609, 615 (Tex. Crim. App.), cert.
denied, 540 U.S. 1004 (2003); see Best, 118 S.W.3d at 862.





[21]McGee, 105
S.W.3d at 615.





[22]Reasor
v. State, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000).





[23]Maxwell
v. State, 73 S.W.3d 278, 281 (Tex. Crim. App.), cert.
denied, 537 U.S. 1051 (2002); Reasor, 12 S.W.3d at 818.





[24]Maxwell, 73
S.W.3d at 281.





[25]Reasor, 12
S.W.3d at 818. 





[26]Martinez
v. State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000).





[27]Johnson, 68
S.W.3d at 653.





[28]Id.





[29]See
Carmouche, 10 S.W.3d at 331 (citing Bumper v. N.C.,
391 U.S. 543, 548-50, 88 S. Ct. 1788, 1792 (1968) (holding consent involuntary
where officer falsely represented he had a valid search warrant)).





[30]Florida
v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04 (1991);
United States v. Mendoza-Gonzalez, 318 F.3d 663, 667 (5th Cir.), cert.
denied, 538 U.S. 1049 (2003).





[31]Mendoza-Gonzalez, 318
F.3d at 667; Wayne R. LaFave, Search
& Seizure '
8.1(c), at 19 (4th ed. 2004).





[32]See
Mendoza-Gonzalez, 318 F.3d at 667 (holding that consent to Atake
a look@
inside accused=s
truck included consent to search boxes found in truck); United States v.
Snow, 44 F.3d 133, 134-35 (2nd Cir. 1995) (holding that consent to search
car included consent to search duffel bag found in back seat and bag jammed
under seat); United States v. Zapata, 18 F.3d 971, 977-78 (1st Cir.
1994) (holding that consent to search car included consent to search duffel
bags found in trunk); see generally, LaFave,
Search & Seizure ' 8.1(c), at 24-26.





[33]Snow, 44
F.3d at 135.





[34]Mendoza-Gonzalez, 318
F.3d at 667.





[35]New
York v. Belton, 453 U.S. 454, 460-61, 101 S. Ct. 2860, 2864
(1981); Ballard, 987 S.W.2d at 892; see McGee, 105 S.W.3d at 615
(holding that search incident to arrest permits search of areas within defendant=s
immediate control).





[36]McGee, 105
S.W.3d at 614; see also Tex. Code
Crim. Proc. Ann. art. 14.01(b) (Vernon 2005) (providing that a peace
officer may arrest an offender without a warrant for any offense committed in
his presence or within his view).





[37]Ballard, 987
S.W.2d at 892.





[38]Estrada, 154
S.W.3d at 607.





[39]During
this time, the officers checked the validity of appellant=s
driver=s
license, proof of insurance, and registration sticker, determined that the van
was not stolen, questioned appellant and Rodriguez about the purpose for their
trip, and tried to decide what to do with the van, since neither appellant nor
Rodriguez had a valid driver=s license. 





[40]See
Maxwell, 73 S.W.3d at 281; Reasor, 12 S.W.3d at
818. 





[41]See
Ross, 32 S.W.3d at 855; Ballard, 987 S.W.2d at 891.





[42]See
Mendoza-Gonzalez, 318 F.3d at 667 (holding that consent to search
inside trailer of commercial vehicle properly extended to box in trailer that Acould
be easily opened by removing or cutting through a single piece of tape,@
where police did not damage box or its contents).





[43]See
Ross, 32 S.W.3d at 855; Ballard, 987 S.W.2d at 891.





[44]See
Belton, 453 U.S. at 460-61, 101 S. Ct. at 2864; Ballard, 987 S.W.2d at
892; see also State v. Gray, 158 S.W.3d 465, 470 (Tex. Crim. App. 2005)
(holding that, incident to a lawful arrest, an officer may search the accused=s
person, the passenger compartment of his vehicle, and the containers in it);
Williams v. State, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986) (holding that
an officer=s search
of a closed sack in a truck after probable cause to arrest existed was a valid
search incident to arrest).